**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| Gene Huguenin, Jr., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| vs. | ) | |
| | ) | C/A No: |
| Richland County; Crayman Harvey, in his | ) | |
| individual and official capacities; Jane Doe | ) | |
| Detention Officer, in her individual capacity; | ) | |
| and John Doe Detention Officer, in his | ) | |
| individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Gene Huguenin, Jr., by and through his undersigned counsel of record, brings this civil rights action pursuant to 42 U.S.C. § 1983 against Richland County, and Crayman Harvey, Jane Doe Detention Officer, and John Doe Detention Officer (collectively hereinafter "the Individual Defendants"), as well as a Tort Claims Act action pursuant to S.C. Code Ann. § 15-78-10, *et seq.*, for gross negligence against Richand County.

## PARTIES

1.    Plaintiff Gene Huguenin, Jr. (hereinafter "Plaintiff") is a citizen of South Carolina and resides in Richland County.

2.    Richland County (hereinafter "Defendant Richland County" or "Richland County") is a county in South Carolina which owns and operates the Alvin S. Glenn Detention Center ("ASGDC").

3.    Upon information and belief, Defendant Crayman Harvey (hereinafter "Defendant Harvey") is a citizen of South Carolina and resides in Richland County, South Carolina, and was the Director or Interim Director of the ASGDC in Richland County and was acting under color of

state law at all times relevant to this Complaint. He is being sued in both his individual and official capacities.

4.     Upon information and belief, Defendant Jane Doe Detention Officer (hereinafter "Defendant Jane Doe") is a citizen of South Carolina and resides in Richland County, South Carolina, and was employed as a detention officer at the ASGDC and was acting under color of state law at all times relevant to this complaint. She is being sued in her individual capacity.

5.     Upon information and belief, Defendant John Doe Detention Officer (hereinafter "Defendant John Doe") is a citizen of South Carolina and resides in Richland County, South Carolina, and was employed as a detention officer at the ASGDC and was acting under color of state law at all times relevant to this complaint. He is being sued in his individual capacity.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over the federal claims against Defendants pursuant to 28 U.S.C. § 1331 because those claims arise under federal law, 42 U.S.C. § 1983.

7.     This Court has supplemental jurisdiction over the state claims against Defendants pursuant to 28 U.S.C. § 1367 because those claims arise under the same facts as those over which the Court has original jurisdiction as described in the preceding paragraph.

8.     This Court further has personal jurisdiction over all Defendants as they reside in this District and their acts and/or omissions complained of occurred within this District.

9.     Venue is proper in the District of South Carolina, Columbia Division, pursuant to 28 U.S.C. § 1391(b)(1) & (2), as the Defendants reside in Richland County and the acts or omissions complained of occurred within Richland County.

10.　　Plaintiff is currently in custody but has no meaningful opportunity to seek administrative remedies. Upon information and belief, the ASGDC is supposed to provide detainees with two options for filing grievances: (1) paper grievance forms provided to detainees upon request, and (2) kiosks that allow detainees to complete and file electronic grievance forms. However, upon information and belief, the ASGDC has removed the grievance kiosks and no longer makes paper grievance forms available.

### FACTUAL ALLEGATIONS

11.　　On March 13, 2023, Plaintiff was arrested and booked into the ASGDC.

12.　　Richland County routinely short staffed the ASGDC of detention officers and personnel with such severity that it adversely affected servicing the detainee population throughout the jail.

13.　　Richland County continues to understaff the jail notwithstanding its knowledge that detainees are assaulting other detainees on a regular basis. These assaults include stabbings like the one suffered by Plaintiff.

14.　　Upon information and belief, Defendant Richland County and the Individual Defendants had knowledge of stabbings occurring in the ASGDC perpetrated by detainees with contraband weapons.

15.　　However, upon information and belief, Defendants routinely failed to search detainees for contraband weapons, which Defendants had reason to believe were frequently smuggled in to the facility by employees or fashioned within the ASGDC by detainees.

16.　　On or about May 11, 2023, Plaintiff was being housed in G "Golf" dorm.

17.     Before he was placed in G Dorm, Plaintiff told detention staff that he did not want to be in G Dorm because he believed it was dangerous for him.  Plaintiff was then given the option to be housed in G Dorm or housed in a lock-up unit.

18.     Roughly one week prior to May 11, 2023, Plaintiff was the target of an incident involving other detainees, in which the detainees rushed Plaintiff's cell, surrounded the door holding knives, and made antagonizing remarks.

19.     Following this incident, Plaintiff raised concerns about his safety to his family and Plaintiff's family called the ASGDC to explain the situation and ask that Plaintiff be moved for his safety.

20.     However, no detention officer ever spoke with Plaintiff about his parents' concerns or otherwise attempted to ensure Plaintiff's safety.

21.     On May 11, 2023, sometime between 12:00 a.m. and 1:00 a.m., Plaintiff was asleep in his cell with the door locked.

22.     Upon information and belief, while Plaintiff was sleeping, a group of detainees popped the lock to his cell and entered.

23.     Plaintiff awoke to five (5) detainees kicking him in the head and stabbing him repeatedly.

24.     During the attack, Plaintiff was stabbed with contraband weapons in his right shoulder, left arm, left lower back, and right leg, and further suffered a left subconjunctival hemorrhage in his eye.

25.     During the attack, the assailants also stole Plaintiff's food, shoes, and property.

26.     Upon information and belief, Defendant Jane Doe was responsible for supervising the G dorm at the time of Plaintiff's assault.

27.     However, Defendant Jane Doe was not present in G dorm and had left it unsupervised.

28.     Plaintiff had previously observed that detention officers would typically enter G dorm around 6:30 p.m. or 7:30 p.m. before leaving until 5:00 a.m. the next morning.

29.     Following the assault, Plaintiff's attackers ran out of his cell and told him, "you're going to get stabbed wherever you go, so no point in running."

30.     Plaintiff thereafter pressed the panic button three (3) times and detention officers eventually arrived and took Plaintiff to the medical unit.

31.     Notably, the detention officers told Plaintiff, "you weren't just stabbed for no reason," and that it was probably just him and his roommate fighting.

32.     Plaintiff was then taken to the hospital and treated for his injuries.

33.     After he was discharged from the hospital, Plaintiff was returned to the ASGDC and placed in the lock-up unit rather than the medical unit.

34.     Plaintiff was told by detention staff that being stabbed was "not enough" to be housed in the medical unit.

35.     While in lock-up, Plaintiff requested medical attention multiple time, including for bleeding wounds, but did not receive medical attention.

36.     Moreover, while in lock-up, Plaintiff was not given a mat, bed, sheets, or a pillow. As a result, Plaintiff, with open wounds, was forced to sleep on the cold floor with no covers. Additionally, Plaintiff was not given the opportunity to shower.

37.     Sometime on May 12, 2023, a nurse saw Plaintiff and noticed that his left eye was bleeding.

38.     Plaintiff was then transferred to the L "Lima" Dorm for some time before the nurse eventually returned and arranged for Plaintiff to be sent to the hospital.

39.     At the hospital, Plaintiff's diagnosis of left subconjunctival hemorrhage was confirmed, and he was provided with a prescription for the same.

40.     After leaving the hospital, Plaintiff returned to the ASGDC and was placed in B "Bravo" Dorm.

41.     While in B Dorm, Plaintiff never received any wound care and would only received an occasional ibuprofen when he complained about pain. Moreover, Plaintiff only received his eye prescription for the first week.

42.     Plaintiff was further precluded from taking a shower for at least two days.

43.     When Plaintiff was permitted to take a shower, the drains weren't working and the shower filled with filthy, standing water as he attempted to bathe. Plaintiff additionally noticed that there was only one working shower for thirty (30) detainees.

44.     In addition to the issues with the showers, Plaintiff did not have access to working toilets or a working sink, which prevented him from washing his hands.

45.     Throughout his time at the ASGDC, Plaintiff's cells were infested with rats which he saw on a daily basis, and Plaintiff observed roaches everywhere, including in his canteen food.

46.     At some point, Plaintiff was transferred to the K "Kilo" Dorm, where he was being housed on June 29, 2023.

47.     On June 29, 2023, around 10:00 p.m., Plaintiff was jumped by five (5) or six (6) detainees who repeatedly hit Plaintiff with a metal rod, eventually knocking Plaintiff unconscious.

48.     Upon information and belief, Defendant John Doe was responsible for supervising the K dorm at the time of Plaintiff's assault.

49.    However, Defendant John Doe was not present in K dorm and had left it unsupervised.

50.    Plaintiff had previously observed that detention officers would typically enter K dorm around 8:30 at night before leaving until 6:30 a.m. the next morning.

51.    Following the assault, Plaintiff was transported to the hospital for medical treatment for injuries to his ribs, neck, and left leg, as well as shortness of breath.

52.    After being released from the hospital, Plaintiff was returned to the ASGDC.

53.    Upon returning, Plaintiff was placed in the lock-up dorm despite not being able to walk as a result of his injuries.

54.    Plaintiff thereafter received no medical treatment while being housed in lock-up.

55.    Plaintiff is currently being housed in Y "Yankee" Dorm.

56.    While in Y Dorm, Plaintiff is only let out of his one-man cell, which he shares with a roommate, for roughly two (2) hours a week and receives minimal recreation time, if any.

57.    While in Y Dorm, Plaintiff has had limited access to the showers and has gone significant stretches without being allowed to bathe, including January 5, 2025, through January 14, 2025.

58.    During his time in Y Dorm, Plaintiff has had to beg for personal hygiene items, such as soap and a toothbrush.

59.    Plaintiff has observed that detainees are not given any cleaning supplies for their living areas and Plaintiff has been forced to tear small rags off of towels so that he may wipe his cell down.

60.    Additionally, Plaintiff has consistently observed roaches in his cell and rats crawling around the dorm at night.

**FOR A FIRST CAUSE OF ACTION**
**(Unconstitutional Conditions of Confinement**
**in Violation of the Fourteenth Amendment)**
**(*against Defendant Jane Doe and Defendant John Doe*)**

61.    Plaintiff repeats and realleges the factual allegations contained in Paragraphs 1-60 as if fully restated herein.

62.    Defendant Jane Doe and Defendant John Doe had an affirmative duty to provide for the basic needs of persons, including safety and treatment for serious medical needs to individuals in their custody and care, including Plaintiff.

63.    Defendant Jane Doe had knowledge of a significant number of stabbings at the ASGDC and still failed to take efforts to ensure Plaintiff's safety.

64.    Even with this knowledge, Defendant Jane Doe did not search detainees in G Dorm or supervise such detainees.

65.    Furthermore, Defendant Jane Doe had knowledge of the significant risks associated with leaving dorms unsupervised yet still failed to take efforts to ensure Plaintiff's safety.

66.    Plaintiff was sleeping in his cell in G dorm, which was unsupervised, when he was attacked and stabbed multiple times by other detainees.

67.    Because G Dorm was unsupervised, there was no one to intervene in Plaintiff's attack and Plaintiff was not able to call for help until his assailants exited his cell.  Even then, Plaintiff was forced to hit the panic button at least three (3) times before detention staff arrived to take him to the medical unit.

68.    Defendant John Doe had knowledge of a significant number of assaults at the ASGDC and still failed to take efforts to ensure Plaintiff's safety.

69.    Even with this knowledge, Defendant John Doe failed to supervise detainees in their dorms.

70.     Furthermore, Defendant John Doe had knowledge of the significant risks associated with leaving dorms unsupervised yet still failed to take efforts to ensure Plaintiff's safety.

71.     Plaintiff was in K Dorm, which was unsupervised, when he was jumped by a group of detainees who beat Plaintiff with a metal rod.

72.     Because K Dorm was unsupervised, there was no one to intervene in Plaintiff's attack before Plaintiff was ultimately rendered unconscious, and Plaintiff has no way of knowing how long he was rendered unconscious before detention staff made efforts to address his serious medical needs.

73.     The conduct and actions of Defendant Jane Doe and Defendant John Doe, in failing to supervise the G and K Dorms, failing to preclude detainees from entering Plaintiff's cell, and failing to intervene in the assaults against Plaintiff were unreasonable, were done intentionally, willfully, maliciously, and with deliberate indifference and/or reckless disregard for Plaintiff's basic human needs, and caused needless injury and suffering.

74.     Defendant Jane Doe and Defendant John Doe's conduct was objectively and subjectively unreasonable.

75.     Defendant Jane Doe and Defendant John Doe's deliberate indifference was the cause in fact and proximate cause of Plaintiff's injuries.

76.     These failures constitute violations of Plaintiff's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

77.     Defendant Jane Doe and Defendant John Doe are liable to Plaintiff for his injuries, pain, and suffering.

**FOR A SECOND CAUSE OF ACTION**
**(Unconstitutional Conditions of Confinement**

**in Violation of the Fourteenth Amendment and**
**<u>Monell v. Department of Social Services of City of New York</u>)**
**(*against Defendant Richland County and Defendant Harvey*)**

78.     Plaintiff repeats and realleges the factual allegations contained in Paragraphs 1-60 as if fully restated herein.

79.     Defendant Richland County and Defendant Harvey had an affirmative duty to provide basic needs including safety, sanitary and humane conditions, and access to medical care to individuals in its custody and care, including Plaintiff.

80.     Plaintiff and Defendants were aware of numerous other assaults and stabbings at ASGDC before Plaintiff was assaulted on two separate occasions, including one stabbing.

81.     Notwithstanding their knowledge of these numerous and frequent assaults and stabbings, Defendants still chose to understaff the Detention Center and allow units to be left unsupervised.

82.     The facts as stated above, as well as numerous other similar incidents, demonstrate a pattern and practice by the Defendants of understaffing the ASGDC such that detainees are routinely unsupervised, exposed to harm from violent detainees, and routinely attacked without intervention from detention center staff.

83.     At the time of his first assault, Plaintiff was sleeping in his cell in G Dorm, which was unsupervised, when he was attacked and stabbed multiple times by other detainees.  Because G Dorm was unsupervised, no one intervened in the assault and Plaintiff's assailants did not stop attacking him until they decided to on their own.  Moreover, Plaintiff's parents had previously raised concerns about Plaintiff's safety after detainees previously attempted to assault Plaintiff, but detention staff failed to act on the information or communicate with Plaintiff about it.

84.     At the time of his second assault, Plaintiff was in K Dorm, which was unsupervised, when he was jumped by a group of detainees who beat Plaintiff with a metal rod.  Because K Dorm was unsupervised, no one intervened in the assault and Plaintiff was ultimately beaten until he was rendered unconscious.

85.     Notwithstanding Defendants' knowledge that detainees could pose a threat to other detainees, Defendants left detainees unsupervised and allowed detainees to assault other detainees, such as Plaintiff, without intervention.

86.     Further, upon information and belief, Defendants failed to appropriately staff the ASGDC, to properly supervise said staff to prevent detainees from being attacked, or to maintain staffing which would enable detention staff to adequately intervene when Plaintiff was assaulted on two different occasions.

87.     Upon information and belief, Defendant Richland County and Defendant Harvey engaged in a pattern and practice of failing to perform appropriate inspections of detainees, detainee cells, and common areas to discover contraband weapons, despite Defendants' explicit knowledge that detainees possess weapons that are used to perpetrate significant harm upon detainees such as Plaintiff.

88.     Plaintiff and Defendants were also aware of numerous other instances of detention staff providing detainees with substandard and unsanitary living conditions and precluding them from having recreation time and/or time outside of their cells .

89.     Notwithstanding knowledge of these customs and practices, Defendants took no action to provide working restroom facilities, to provide sanitary conditions and prevent rat and roach infestations in living spaces and food, and further failed to provide Plaintiff with a bed, pillow, or covers, requiring him to sleep on the floor.

90.     Moreover, Defendants took no action to ensure that detainees were not being precluded from recreation time or other time spent out of their cells, or to prevent detainees from spending significant stretches of time locked in cramped one-man cell with another person.

91.     The facts as stated above demonstrate Defendant Richland County's pattern and practice of understaffing its facility such that detainees are routinely housed in substandard and unsanitary conditions, exposed to restroom facilities in disrepair, routinely denied basic amenities such as a bed, bedding, soap, or a toothbrush, and denied the opportunity for recreation time or other time spent outside of their cells.

92.     The conduct and actions of Defendants, acting under color of state law, in failing to adequately supervise detainees, failing to respond to concerns raised about Plaintiff's safety, failing to prevent Plaintiff from being assaulted, failing to intervene as Plaintiff was assaulted on two different occasions, failing to provide Plaintiff with timely health care for serious medical needs, failing to provide Plaintiff with working restroom facilities, failing to prevent Plaintiff's consistent exposure to pests, failing to provide Plaintiff basic amenities such as a bed, bedding, soap, or a toothbrush, and providing Plaintiff with almost no time outside of his cell were unreasonable, were done intentionally, willfully, maliciously, and with deliberate indifference and/or reckless disregard for Plaintiff's basic human needs and serious medical needs, and caused injury and suffering.

93.     Defendant Richland County and Defendant Harvey's conduct was objectively and subjectively unreasonable.

94.     Defendant Richland County and Defendant Harvey's patterns and practices constituted deliberate indifference and were the cause in fact and proximate cause of Plaintiff's injuries.

95.    These failures constitute violations of Plaintiff's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

96.    Defendant Richland County and Defendant Harvey are liable to Plaintiff based upon these improper practices.

**FOR A THIRD CAUSE OF ACTION**
**(Deliberate Indifference to Serious Medical Needs**
**in Violation of the Fourteenth Amendment)**
**(*against Defendant Jane Doe and Defendant John Doe*)**

97.    Plaintiff repeats and realleges the factual allegations contained in Paragraphs 1-60 as if fully restated herein.

98.    Defendant Jane Doe and Defendant John Doe had an affirmative duty to provide Plaintiff with adequate medical care for serious medical needs during his confinement.

99.    The facts as stated in the above-referenced paragraphs demonstrate a deliberate indifference to Plaintiff's serious medical needs in violation of the Fourteenth Amendment.

100.    The conduct and actions of Defendant Jane Doe and Defendant John Doe, acting under color of state law, in failing to provide Plaintiff access to adequate medical care for serious medical needs were unreasonable, were done intentionally, willfully, maliciously, and with deliberate indifference and/or reckless disregard for Plaintiff's basic human needs, and caused needless injury and suffering.

101.    Defendant Jane Doe and Defendant John Doe's conduct was objectively and subjectively unreasonable.

102.    Defendant Jane Doe and Defendant John Doe's deliberate indifference was the cause in fact and proximate cause of Plaintiff's injuries.

103.     Defendant Jane Doe and Defendant John Doe's deliberate indifference to Plaintiff's serious medical needs constitutes a violation of Plaintiff's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

104.     Defendant Jane Doe and Defendant John Doe are liable to Plaintiff for this deprivation of rights.

**FOR A FOURTH CAUSE OF ACTION**
**(Deliberate Indifference to Serious Medical Needs**
**in Violation of the Fourteenth Amendment and**
**Monell v. Department of Social Services of City of New York)**
**(*against Defendant Richland County and Defendant Harvey*)**

105.     Plaintiff repeats and realleges the factual allegations contained in Paragraphs 1-60 as if fully restated herein.

106.     Defendant Richland County and Defendant Harvey had an affirmative duty to provide Plaintiff with adequate medical care for his serious medical needs during his confinement.

107.     Upon information and belief, numerous other detainees at the ASGDC have experienced a failure by Defendant Richland County and Defendant Harvey to adequately provide for medical care in deliberate indifference to other individuals' serious medical needs. In failing to staff the Detention Center, Defendants engaged in a pattern and practice of failing to provide appropriate medical care for serious medical needs.

108.     The facts of this case, and other known incidents, demonstrate a deliberate indifference to Plaintiff's serious medical needs in violation of the Fourteenth Amendment.

109.     The facts as stated in the above-referenced paragraphs demonstrate a pattern and practice by Defendant Richland County and Defendant Harvey of understaffing the ASGDC such

that detainees such as Plaintiff are routinely prevented from being examined by medical staff and from being sent for outside medical care when necessary for serious medical needs.

110.    The conduct and actions of Defendants, acting under color of state law, in failing to provide Plaintiff access to adequate medical care constitute deliberate indifference and/or reckless disregard for Plaintiff's serious medical needs, and caused needless suffering and further injury.

111.    Defendant Richland County and Defendant Harvey's conduct was objectively and subjectively unreasonable.

112.    Defendant Richland County and Defendant Harvey's deliberate indifference was the cause in fact and proximate cause of Plaintiff's injuries.

113.    This failure to provide Plaintiff access to adequate medical care constitutes a violation of Plaintiff's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

114.    Defendant Richland County and Defendant Harvey are liable to Plaintiff for this deprivation of his Constitutional rights.

**FOR A FIFTH CAUSE OF ACTION**
**(Gross Negligence)**
*(against Defendant Richland County)*

115.    Plaintiff repeats and realleges the factual allegations contained in Paragraphs 1-60 as if fully restated herein.

116.    This is an action for gross negligence brought against Defendant Richland County under the laws of the State of South Carolina.

117.    This cause of action is brought pursuant to the South Carolina Tort Claims Act, S.C. Code Ann. §§ 15-78-10, *et seq*.

118.    At all times relevant to this complaint, the Individual Defendants and other detention staff at the ASGDC were employees and/or agents of Defendant Richland County, which funds the ASGDC and manages it pursuant to authority vested in it by the Richland County Sheriff[1], and were acting within the course and scope of their employment, in furtherance of the interests of Defendant Richland County, and with Richland County's knowledge and consent.

119.    Defendant Richland County is liable for the actions and omissions of its employees and/or agents that gave rise to this action, including the actions and omissions of the Individual Defendants.

120.    Defendant Richland County by and through its employees and agents, owed a duty to Plaintiff, including the special duty to him while in their custody to act in a prudent and reasonable manner with regard to his health and safety in the following particulars, to wit:

    a.   to properly staff its facility;

    b.   to ensure staff supervision of detainees;

    c.   to confine detainees in accordance with guidelines to ensure their safety and security;

    d.   to prevent attacks by other detainees;

    e.   to enforce its own policies with respect to the possession of contraband and the search for and removal thereof;

    f.   to intervene during attacks on their premises;

    g.   to promptly provide adequate medical care for serious medical needs;

    h.   to provide detainees with sanitary and humane living conditions;

---

[1] S.C. Code Ann. § 24-5-10, *et seq*.

     i.   to provide detainees with basic amenities including, but not limited to, a bed, bedding, soap, and a toothbrush;

     j.   to prevent infestation of rats and roaches in detainee living areas; and

     k.   to provide detainees with reasonable recreation time and/or other time outside of their cells.

121.    Defendant Richland County also owed ministerial duties in the following particulars, to wit:

     a.   to provide responsible and effective operations of the ASGDC;

     b.   to establish proper policies, customs, and regulations of the ASGDC;

     c.   to supervise its detention staff;

     d.   to properly train and retrain said staff;

     e.   to discipline said staff and only retain those persons fit for duty; and

     f.   to properly correct and remediate any known deficiencies within its staff or within the ASGDC.

122.    Upon information and belief, prior to the incident involving Plaintiff, Defendant Richland County had customs or policies of the following, which upon information and belief still exist at this time:

     a.   Understaffing the ASGDC;

     b.   failing to screen detainees for contraband or jail-fashioned weapons;

     c.   failing to adequately supervise detainees;

     d.   leaving detainees who are attacked to fend for themselves;

     e.   failing to provide prompt and adequate medical care for serious medical needs;

f.  failing to properly train, retrain, supervise, and discipline detention staff including the Individual Defendants;

g.  failing to ensure that detainees are housed in sanitary and humane conditions;

h.  failing provide detainees with basic amenities such as a bed, bedding, soap, and a toothbrush;

i.  allowing detainee living areas to become infested with rats and roaches; and

j.  providing detainees with almost no recreation time and/or time outside of their cells.

123.    The aforementioned failures amounted to violations of non-discretionary and non-delegable duties owed to detainees of ASGDC including Plaintiff.

124.    As such, Defendant Richland County breached its duties including ministerial duties owed to Plaintiff.

125.    Defendant Richland County's failure to reprimand and intervene and/or take corrective action against its corrections staff or within the ASGDC is evidence that Defendant Richland County ratified and promulgated staff misconduct and the conditions inside the ASGDC, and provides further evidence of its breach of duties owed to detainees housed at the ASGDC, including Plaintiff.

126.    Upon information and belief, in the years prior to the incident involving Plaintiff, despite knowledge of weapons within the ASGDC and violence between detainees, Defendant Richland County never reviewed, or formally amended training and/or policies and/or disciplinary measures and/or supervision techniques to eradicate or even mitigate the threat posed by violent detainees.

127.     Defendant Richland County's continued and repeated failures as described herein resulted in its authorized employees, including the Individual Defendants, breaching the duty they owed by showing an absence of care and/or willfully, wantonly, and recklessly disregarding the life and bodily integrity of Plaintiff by failing to address concerns regarding Plaintiff's safety, failing to supervise detainees, failing to intervene when Plaintiff was attacked on multiple occasions, leaving Plaintiff to fend for himself when he was attacked, failing to timely provide Plaintiff with adequate medical attention to treat his injuries, failing to provide Plaintiff with working restroom facilities, failing to limit Plaintiff's exposure to pests,  failing to provide Plaintiff with basic amenities such as a bed, pillow, sheets, and a toothbrush, and providing Plaintiff with almost no time outside of his cell.

128.     Defendant Richland County knew or should have known of the dangers posed by its failures illustrated in this Complaint, and that said actions and inactions were reckless and or constituted the total absence of care likely to result in violations of a detainee's rights, and as such were reasonably foreseeable.

129.     Defendant Richland County, by and through its duly authorized employees, owed a duty to Plaintiff to be reasonable in the management and conduct of the ASGDC.

130.     Defendant Richland County, by and through the its authorized employees, including the Individual Defendants, breached duties owed to Plaintiff by failing to search or screen Plaintiff's attackers and to ensure that they did not have access to contraband weapons, failing to address concerns regarding Plaintiff's safety, failing to intervene when Plaintiff was attacked on multiple occasions, failing to supervise detainees, leaving Plaintiff to fend for himself as he was violently attacked, failing to provide Plaintiff with prompt and adequate medical care for his serious medical needs, failing to provide Plaintiff with working restroom facilities, failing

to limit Plaintiff's exposure to pests, failing to provide Plaintiff with basic amenities such as a bed, pillow, sheets, and a toothbrush, and providing Plaintiff with almost no time outside of his cell.

131.    Each act or omission detailed in this matter constitutes a separate occurrence.

132.    Defendant Richland County's actions and omissions, by and through its authorized agents, were unreasonable, constituted the total absence of care, and breached duties owed to Plaintiff and actually and proximately contributed to and/or caused the severe injury sustained by Plaintiff.

133.    Plaintiff is entitled to Judgment against Defendant Richland County for damages as to be determined by the triers of fact in this case.

## JURY DEMAND

**WHEREFORE**, Plaintiff demands a trial by jury and respectfully requests that this Court award the following damages, jointly and severally against Defendants, as provided by South Carolina law and the United States Constitution, including but not limited to the following:

a.   Compensatory, actual, and consequential damages to Plaintiff;

b.   Costs of this action and attorney's fees to Plaintiff for the civil rights causes of action under 42 U.S.C. § 1988;

c.   Loss of past and future support and services with interest;

d.   Loss of earnings and/or earning capacity;

e.   Punitive damages; and

f.   Such other and further relief as this Court may deem appropriate.

Respectfully submitted, this 5th day of March, 2025.

**STROM LAW FIRM, LLC**

*s/ Bakari T. Sellers*
Bakari T. Sellers (SC Fed. ID # 11099)

Mario A. Pacella (SC Fed. ID # 7538)
Amy E. Willbanks (SC Fed. ID # 13537)
Alexandra Benevento (SC Fed. ID # 10734)
Matthew B. Robins (SC Fed. ID # 13313)
6923 N. Trenholm Road, Suite 200
Columbia, South Carolina 29206
Phone: (803) 252-4800
Email: bsellers@stromlaw.com
        mpacella@stromlaw.com
        awillbanks@stromlaw.com
        abenevento@stromlaw.com
        mrobins@stromlaw.com

*Attorneys for Plaintiff*